[Nos. 36470-1-II; 36536-7-II.   Division Two.   February 10, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. ALAN GENE BREWER, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. MELISSA RENE DANIELSON, *Appellant*.

668

*Steven W. Thayer; Kyra K. Rohner* (of *Coughlin Leuenberger & Moon, PC*); and *John A. Hays*, for appellants.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

¶1 HUNT, J. — In this consolidated appeal, Alan Brewer and Melissa Danielson (Defendants) challenge their jury trial convictions for possession of a controlled substance (methamphetamine), manufacture of a controlled substance (methamphetamine) with enhancements, and possession of pseudoephedrine with intent to manufacture a controlled substance (methamphetamine) with enhancements. The Defendants argue that the trial court erred in (1) denying their motion to exclude evidence seized during an allegedly improper search of their storage shed; (2) allowing the State to amend the information, just before resting its case, by replacing a school zone sentencing enhancement with a school bus zone enhancement; (3) failing to merge their second and third counts for manufacture of methamphetamine and possession of a methamphetamine precursor with the intent to manufacture methamphetamine; and (4) imposing an unconstitutionally vague community custody condition. They also argue that the evidence is insufficient to support their convictions for constructive possession of methamphetamine. Adopting Division One's *State v. Gaworski*[1] double jeopardy analysis and application to merger principles, we affirm.

## FACTS

### I. METHAMPHETAMINE POSSESSION AND MANUFACTURE

¶2 Acting on an informant's tip, Detective Tim Boardman, a deputy sheriff with the Clark-Skamania Drug Task Force, requested a warrant to search a Vancouver residence that was reportedly involved in the manufacture and sale of methamphetamine. The informant told Detective Boardman that he/she had observed the following items inside the residence: (1) methamphetamine; (2) numerous people consuming methamphetamine; (3) five or six drug transactions; and (4) multiple scales, packaging material, and drug paraphernalia. The informant had pre-

---

[1] 138 Wn. App. 141, 156 P.3d 288 (2007).

viously aided law enforcement with a controlled buy of illegal drugs.

¶3 After meeting with the informant, Detective Boardman went to a trailer park abutting the residence to gather additional information for the warrant affidavit. Detective Boardman incorporated his observations into the affidavit, describing the geographic, structural, and aesthetic characteristics of the property, which included a mobile home unit, a storage shed, a carport awning, and a fenced-in yard. From Detective Boardman's vantage point, the mobile home and storage shed appeared "like all one building."

¶4 Defendants Alan Brewer and Melissa Danielson lived as cotenants on this property, which they rented from neighbor Tantum Thorp; the lease agreement listed Brewer as the tenant. On June 13, 2006, the superior court issued a search warrant for the residence. The search warrant provided the following description of the property to be searched:

> A white mobile home with green trim and an adjacent shed with a gray tarp covering the roof and the front of the shed. The mobile home is located down a gravel drive that runs east to west from 131st Ave. There is a mail box on the south side of the driveway entrance that reads 5910. The home has a specific address of 5910 NE 131 st Ave, Vancouver Clark County Washington.

Danielson's Clerk's Papers (CP) at 44.

¶5 While searching the mobile home, law enforcement found pseudoephedrine, coffee filters, hot plates, and plastic tubing, all of which appeared to be used for manufacturing methamphetamine. The officers also found 2.4 grams of methamphetamine in crystalline form, instructional literature for manufacturing methamphetamine, and financial documents identifying both defendants by name.

¶6 Danielson then pointed out the window and told Detective Boardman to look in an adjacent storage shed. The shed, a small, four-sided structure, stood adjacent to

the mobile home unit, mere inches away from the mobile home's outer wall; wiring and nails connected the shed to the mobile home's wall. Danielson led Officer Josanna Hopkins to the shed and gestured toward a red suitcase. Inside the red suitcase, Officer Hopkins found "lab equipment," including flasks, tubing, matchbooks, red phosphorous, and iodine.

## II. PROCEDURE

¶7 The State charged both Brewer and Danielson with unlawful possession of a controlled substance—methamphetamine (Count 1), unlawful manufacture of a controlled substance—methamphetamine (Count 2), and unlawful possession of pseudoephedrine (methamphetamine precursor) with intent to manufacture a controlled substance—methamphetamine (Count 3). The State added sentencing enhancements to Counts 2 and 3 for committing the offenses in the presence of minors. The State also added another sentencing enhancement to Count 2 for committing the offense within 1,000 feet of a school zone.

¶8 Defendants moved to suppress all evidence seized during the warrant execution. The trial court denied this motion, ruling that the warrant had sufficiently identified the mobile home and adjacent storage shed as places to be searched and that the officers had acted within the scope of the warrant while conducting the search.

¶9 On the second day of the jury trial, one and one-half hours before resting, the State sought to correct an error in the information by amending the "school zone" sentencing enhancement to a "school bus stop" enhancement for Count 2. Thereafter, the State called two more witnesses before the trial court granted the motion. The trial court ruled that the amendment did not prejudice Defendants because (1) the school zone and school bus stop enhancements were parallel, (2) the defense received advance notice that two of the State's last witnesses would testify about the proximity of the school bus stop, and (3) the defense had an opportunity to cross-examine these witnesses.

¶10 The jury found both Defendants guilty on all counts. The jury also answered three special verdict forms in the affirmative. On special verdict A, for the school bus stop enhancement, the jury found that the defendants manufactured a controlled substance within 1,000 feet of a school bus stop, Count 2. On special verdict B, the jury found that the defendants manufactured a controlled substance in the presence of a person under 18 years old, Count 2. On special verdict C, the jury found that the defendants possessed pseudoephedrine with the intent to manufacture methamphetamine in the presence of a person under 18 years old, Count 3.

¶11 The trial court imposed standard-range sentences of 134 months minus 83 days for time served for both Defendants. The trial court also imposed a 9- to 12-month community custody condition, which prohibits Defendants from possessing or using drug paraphernalia, and other items not in issue here, following their release from confinement.[2]

¶12 Defendants did not argue at sentencing that their two convictions for manufacture of a controlled substance and possession of pseudoephedrine with intent to manufacture a controlled substance should merge. Nor does it appear from the record that they raised merger at any time during the trial court proceedings.

¶13 Defendants appeal.

## ANALYSIS

### MERGER; DOUBLE JEOPARDY

¶14 Defendants argue, for the first time on appeal, that the trial court placed them in double jeopardy by refusing to

---

[2] The community custody provision, with conditions, stated:

Defendant shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, cellular phones, police scanners and hand held electronic scheduling or data storage devices.

Danielson's CP at 131-32.

merge their convictions for manufacturing methamphetamine and possession of pseudoephedrine with intent to manufacture methamphetamine. They assert that these two offenses meet the *Blockburger* "same elements" test and, thus, the crimes cannot support separate convictions and separate penalties. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

¶15 The State counters that these offenses fail to meet the same elements test, emphasizing that Division One recently decided this very issue in *Gaworski*, 138 Wn. App. 141. Agreeing with the State, we adopt and apply *Gaworski*.

## A. Standard of Review

¶16 We will not consider an issue raised for the first time on appeal unless it involves a manifest error affecting a constitutional right. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); RAP 2.5(a). To raise such an issue on appeal, the defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial. *Kirkman*, 159 Wn.2d at 926. This showing of actual prejudice is what makes the error "manifest," allowing appellate review. *Id.* at 927.

¶17 Defendants' double jeopardy claim, based on failure to merge two charges, meets this manifest constitutional error test; we must vacate convictions that violate double jeopardy. *State v. Womac*, 160 Wn.2d 643, 658-60, 160 P.3d 40 (2007). Interpreting and applying the double jeopardy clause is a question of law, which we review de novo. *State v. Knight*, 162 Wn.2d 806, 810, 174 P.3d 1167 (2008).

## B. Double Jeopardy

¶18 The Fifth Amendment to the United States Constitution prohibits the government from putting any person in jeopardy twice for the same offense. *See* CONST.

art. I, § 9. We interpret the Washington Constitution's analogous double jeopardy clause in the same way that the United States Supreme Court interprets the Fifth Amendment. *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995).

¶19 Courts may not enter multiple convictions for the same offense without offending double jeopardy. *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004).

¶20 The merger doctrine applies when the Legislature clearly indicates that, to prove a particular degree of a crime, the State must prove not only that the defendant committed the crime but also that the crime was accompanied by an act that is defined as a crime elsewhere in the criminal statutes. *State v. DeRyke*, 110 Wn. App. 815, 823, 41 P.3d 1225 (2002) (citing *State v. Vladovic*, 99 Wn.2d 413, 421, 662 P.2d 853 (1983)). But when the legislative intent is unclear, we apply the *Blockburger* "same elements" test. In undertaking this analysis, we determine whether each crime contains an element that the other does not. *State v. Cox*, 109 Wn. App. 779, 784, 37 P.3d 1240 (2002) (citing *Blockburger*, 284 U.S. at 304). If each crime contains an element not contained in the other, the offenses are not the same for double jeopardy purposes. *Cox*, 109 Wn. App. at 784; *see State v. Calle*, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995).

### C. *Gaworski*: "Same Elements" Test

¶21 Gaworski argued that his conviction for unlawful possession of drugs with intent to manufacture should merge with his conviction for unlawful manufacture of drugs because "manufacture" necessarily involves the pos-

session of precursors with the intent to manufacture. *Gaworski*, 138 Wn. App. at 146. Division One of our court rejected this argument. Holding that possession of a precursor ingredient is not a required element of manufacturing a controlled substance, Division One concluded that Gaworski's convictions did not meet the *Blockburger* "same elements test":

> Possession of precursor ingredients is not a required element of manufacturing. A person who knowingly plays even a limited role in any of these processes manufactures methamphetamine, and a person can knowingly commit the crime of manufacturing a controlled substance without ever constructively possessing it. For example, fingerprints on four items in a "box lab"[3] used only to manufacture methamphetamine were sufficient evidence to sustain a conviction of manufacturing. Conversely, a person may possess precursor ingredients with intent to manufacture methamphetamine without ever beginning the actual manufacturing process. The two crimes do not require proof of the same facts, and we presume the legislature intended separate punishments.

*Id.* at 147 (footnotes omitted).

¶22 Like Gaworski, Brewer and Danielson argue that their convictions for manufacturing a controlled substance and possessing a precursor ingredient with the intent to manufacture a controlled substance are identical in both fact and law. As in *Gaworski*, these arguments fail. RCW 69.50.440(1) defines the crime of "possession with intent to manufacture" as follows:

> It is unlawful for any person to possess ephedrine or any of its salts or isomers or salts of isomers, pseudoephedrine or any of its salts or isomers or salts of isomers, pressurized ammonia gas, or pressurized ammonia gas solution with intent to manufacture methamphetamine, including its salts, isomers, and salts of isomers.

---

[3] Division One used the term "box lab" in *Gaworski* but did not define it. A "box lab" contains devices and chemicals used to manufacture methamphetamine, "but it is in a stored state and generally not in use." Summit County Sheriff, Known Methamphetamine Labs, available at http://www.co.summit.oh.us/sheriff/Meth_Sites/Meth_Sites.asp (last visited Dec. 30, 2008).

In contrast, RCW 69.50.401(1) makes it "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.101(p) defines "manufacturing" as follows:

"Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

Under this statutory definition, simply possessing a precursor ingredient with "the intent to manufacture" can establish the crime of possession with intent to manufacture.

¶23 Adopting Division One's *Gaworski* analysis, we hold that Defendants' two methamphetamine offenses do not meet the "same elements" test, they do not merge, and the convictions do not violate the constitutional prohibitions against double jeopardy.

¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J., concurs.

¶25 VAN DEREN, C.J. (concurring in part and dissenting in part) — I concur with the result affirming the convictions of Alan Gene Brewer and Melissa Rene Danielson but respectfully dissent on the issue of whether a convicted person must show actual harm before their challenge to community custody conditions for unconstitutional vagueness ripens. Majority slip op. (unpublished portion) at 17-18.

¶26 *State v. Bahl*, 164 Wn.2d 739, 750-51, 193 P.3d 678 (2008), states four requirements: (1) a primarily legal issue, (2) no necessary further factual development, (3) final

action, and (4) a consideration of hardship to the parties if the court does not review the condition imposed. The majority adds a fifth requirement: evidence of harm before review is granted. The majority merely repeats *Motter*'s requirement to show harm before review will be granted, *State v. Motter*, 139 Wn. App. 797, 803-04, 162 P.3d 1190 (2007), essentially transforming the need for further factual development under *Bahl* to ripeness dependent on harm shown.

¶27 Harm will arise in the context of a hearing on violation of the community custody conditions, with sanctions imposed, i.e., revocation of community custody or additional time to be served. The majority suggests that following a finding of violation of the condition, a defendant may file a personal restraint petition for relief from unreasonable application or interpretation of the community custody conditions.

¶28 The majority ignores the hardship arising from arrest, hearing, confinement, and the delay inherent in personal restraint petitions and creates a necessity for further factual development via imposition of sanctions for violating community custody conditions that may, indeed, be unwarranted or unconstitutionally vague. This result shifts all of the hardship to the defendant, when addressing the imposition of particular community custody conditions on direct appeal imposes virtually no hardship on the State.

¶29 The better result is to deal with challenges to community custody conditions on direct appeal rather than assuming that they are warranted and pass constitutional muster until a defendant may later be sanctioned inappropriately for using a cell phone or other innocuous device without evidence of associated criminal activity. I would suggest that RCW 69.50.102 provides a definition of "drug paraphernalia" that would help alleviate the vagueness issue, as it not only lists items considered such paraphernalia but also addresses how to consider whether an item is properly considered to be drug paraphernalia in a given factual context. Because the statute is presumed constitu-

tional, if the trial court were to refer to this statute as its definition of the items prohibited while on community custody, defendants' vagueness challenge may well not be ripe or warranted.

Review denied at 166 Wn.2d 1016 (2009).