[No. 38556-2-II.   Division Two.   March 2, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. ORLIN ANTONIO CAMPOS-CERNA, *Appellant*.

*John A. Hays*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

¶1 VAN DEREN, C.J. — Orlin Campos-Cerna appeals his convictions for first degree murder and attempted first degree murder, arguing that (1) the juvenile warning included in his written *Miranda*[1] advisement invalidated the waiver of his *Miranda* rights and (2) the State's evidence was not sufficient to show that he acted with premeditation. We affirm.

## FACTS

¶2 On October 11, 2007, an unidentified male shot a gun at a vehicle in Vancouver, Washington, killing one of the two passengers. Acting on a tip, Vancouver Police Detectives John Ringo and Wallace Stefan went to Campos's[2] home to

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The appellant requested to be referred to as "Campos," rather than "Campos-Cerna." Report of Proceedings at 157-58.

talk with him and then he voluntarily accompanied them to the police department for questioning. The initial interview took place in a large conference room with outside access through doors and windows. The detectives did not hand-cuff Campos; they told him that he was free to leave; and, although he was not under arrest, the detectives told Campos that "he ha[d] every right to refuse to speak to [them]." Report of Proceedings (RP) at 393.

¶3 Campos initially denied knowledge or involvement in the shooting. When the detectives informed him that the shooting victim had died, Campos "admitted . . . that he had been the individual that was there and had been the individual that had shot and killed [Jose] Avila." RP at 398. Campos then agreed to and did provide a videotaped statement, during which he repeated that he had shot at the car, resulting in Avila's death. The detectives detained Campos before he gave his statement and, although Campos had initially refused to sign the *Miranda* waiver form as well as the additional juvenile warning, they duly advised him of his *Miranda* rights before and during the recording. The State later charged Campos with first degree murder and attempted first degree murder.

¶4 The trial court held a CrR 3.5 hearing to determine the admissibility of Campos's videotaped statement to the police. The detectives believed that Campos understood the rights they had read to him from their standard form. The form stated:

Before answering any questions, we are required to advise you that:

1.  You have the right to remain silent.
2.  Anything you[ ] say can be used against you in a court of law.
3.  You have the right at this time to talk to a lawyer and have him present with you while you are being questioned.
4.  If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.

5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

Ex. 2. The signed waiver also included a juvenile warning:

ADDITIONAL WARNING TO PERSONS UNDER 18

If you are under the age of 18, anything you say can be used against you in a juvenile court prosecution for juvenile offenses and can also be used against you in an adult court criminal prosecution if the juvenile court decides that you are to be tried as an adult.

Ex. 2 (emphasis omitted). Campos also signed this juvenile warning.[3]

¶5 During the ensuing three hour interview, the detectives allowed Campos to go unaccompanied to the bathroom, to get water, and to get food. And when Campos told the detectives that he wanted to speak to his "aunt" and a "cousin or a relative," those individuals were allowed to come to the building, where they "visited and had a conversation" with Campos. RP at 17.

¶6 Although Campos initially planned to testify at the CrR 3.5 hearing, he chose not to testify after the trial court informed him of his rights. Campos argued that his signature on the waiver was not "intelligently made" because he did not have counsel present, counsel would have advised him not to give the statement, he was 17, English was not his first language, he went through only the ninth grade in school, and an interpreter was neither offered nor provided. RP at 50. Campos stressed that he did not fully understand the consequences of his decision. The trial court ruled that Campos "understood his rights and made [a] knowing, voluntarily informed waiver of those rights" and admitted his statements. RP at 52. Campos was convicted as charged as an adult.

¶7 Campos appeals.

---

[3] Campos was 17 years old at the time of the shooting and the interview but turned 18 before trial.

## ANALYSIS

### *Miranda* Waiver

¶8 Campos argues that the *Miranda* warning he signed was invalid because the additional warning to minors—although it specified that the juvenile court could decide that Campos should be tried as an adult—did not adequately explain that a statute may automatically divest a juvenile court of authority to hear a case in which a juvenile is charged. Campos further contends that because he received defective *Miranda* warnings before his custodial interrogation and arrest, any confession obtained is inadmissible. The State argues that nothing in the record shows that Campos's statement was anything but voluntary, the additional warning did not coerce or confuse Campos, and he did not raise this issue in his CrR 3.5 hearing, thus he waived it. We agree with the State.

### A. Standard of Review

¶9 *Miranda* claims are issues of law that we review de novo. *State v. Daniels*, 160 Wn.2d 256, 261, 156 P.3d 905 (2007). We also review de novo the adequacy of a *Miranda* warning and whether there was a valid waiver[4] of *Miranda* rights. *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989); *State v. Johnson*, 94 Wn. App. 882, 897, 974 P.2d 855 (1999).

### B. *Miranda* Waiver

¶10 The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be com-

---

[4] We note that "findings of fact entered following a CrR 3.5 hearing will be verities on appeal if unchallenged; and, if challenged, they are verities if supported by substantial evidence in the record." *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). As Campos's argument challenges the findings and conclusions only to the extent that the trial court erred in its legal view of the *Miranda* waiver's additional juvenile advisement of rights language, our review is de novo.

pelled in any criminal case to be a witness against himself." The Washington Constitution article I, section 9 grants a similar right and its protection is coextensive with the right that the Fifth Amendment provides. *State v. Unga*, 165 Wn.2d 95, 100, 196 P.3d 645 (2008). "The State bears the burden of showing a knowing, voluntary, and intelligent waiver of *Miranda* rights by a preponderance of the evidence." *State v. Athan*, 160 Wn.2d 354, 380, 158 P.3d 27 (2007).

■ ¶11 Our courts have found "[i]mplied waiver . . . where the record reveals that a defendant understood his rights and volunteered information [and] where the record shows that a defendant's answers were freely and voluntarily made without duress, promise or threat and with a full understanding of his constitutional rights." *State v. Terrovona*, 105 Wn.2d 632, 646-47, 716 P.2d 295 (1986). We also infer a waiver "when a defendant voluntarily discusses the charged crime with police officers and indicates an understanding of his rights." *State v. Ellison*, 36 Wn. App. 564, 571, 676 P.2d 531 (1984).

C. Juvenile's Waiver of *Miranda* Rights

■ ■ ¶12 In determining whether a juvenile has voluntarily waived *Miranda* rights, we consider the totality of the circumstances. *State v. Allen*, 63 Wn. App. 623, 626, 821 P.2d 533 (1991). And we evaluate the totality of the circumstances surrounding an interrogation to determine whether the defendant voluntarily gave custodial statements. *Unga*, 165 Wn.2d at 100.

> Circumstances that are potentially relevant in the totality-of-the-circumstances analysis include the "crucial element of police coercion"; the length of the interrogation; its location; its continuity; the defendant's maturity, education, physical condition, and mental health; and whether the police advised the defendant of the rights to remain silent and to have counsel present during custodial interrogation.

*Unga*, 165 Wn.2d at 101 (quoting *Withrow v. Williams*, 507 U.S. 680, 693, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993)).

D. Preservation of Issue for Appeal

¶13 To preserve a *Miranda* waiver advisement issue for appeal, a defendant must raise the issue at his "CrR 3.5 [hearing] or the fact-finding portions of the proceedings." *State v. Spearman*, 59 Wn. App. 323, 325, 796 P.2d 727 (1990); *see* RAP 2.5(a); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). But where the waiver involves a manifest error that affects a constitutional right, we may consider it for the first time on appeal. *State v. Brewer*, 148 Wn. App. 666, 673, 205 P.3d 900, *review denied*, 166 Wn.2d 1016, 210 P.3d 1019 (2009); RAP 2.5(a)(3). The defendant must identify and show how the alleged constitutional error affected the defendant's rights at trial. Showing actual prejudice demonstrates the "manifest" nature of the error and allows appellate review. *Brewer*, 148 Wn. App. at 673. "[W]hen an adequate record exists, the appellate court may carry out its long-standing duty to assure constitutionally adequate [proceedings] by engaging in review of manifest constitutional errors raised for the first time on appeal." *State v. Contreras*, 92 Wn. App. 307, 313, 966 P.2d 915 (1998).

E. Additional Juvenile Advisement of Rights

¶14 Here, Campos focuses on the additional language directed at juveniles, informing him that statements he made after waiving his right to remain silent under *Miranda* could be used against him in an adult court proceeding without the juvenile court first declining jurisdiction. He argues that, before his statement could be used against him, the juvenile court had to actually decline its jurisdiction over the matter and that the juvenile warning did not advise him that the juvenile court did not have original jurisdiction over certain serious crimes, such as murder or attempted murder or assault. We disagree.

¶15 In *Spearman*, Division One of this court held that a juvenile could not raise for the first time on appeal the issue of whether an incomplete juvenile warning invalidated the

waiver of *Miranda* rights. 59 Wn. App. at 325. The advisement of rights that Spearman signed stated in part:

> "Anything that I say or sign can be used against me in a court of law. I understand that if I am a juvenile, anything that I say or sign can be used against me in a criminal prosecution in the event that Juvenile Court declines jurisdiction in my case."

*Spearman*, 59 Wn. App. at 324 (quoting court record). The juvenile court entered an adjudication against Spearman for second degree burglary. *Spearman*, 59 Wn. App. at 324. On appeal, he contended that the " 'plain reading' " of the additional juvenile advisement was "that statements made by juveniles can only be used against them when juvenile jurisdiction is declined, and therefore his statements could not be used against him in th[e] juvenile proceeding." He then argued "that because he was not specifically informed that the statements could be used against him in juvenile court, under the totality of the circumstances surrounding the making of the statements, his statements were not knowingly and voluntarily given." *Spearman*, 59 Wn. App. at 325.

¶16 The court noted that the record did not demonstrate "that Spearman was in any way confused by the advisement that was read to him and that he initialed." *Spearman*, 59 Wn. App. at 325. Given the absence of any showing of confusion, the court did "not find any facial defect or ambiguity in the form" because the first sentence put Spearman on notice that his statement could be used in a court of law, which included the juvenile court. *Spearman*, 59 Wn. App. at 325. Finally, the court stated:

> Although the issue implicates Spearman's constitutional rights, it is not of such truly constitutional magnitude that it can be raised for the first time on appeal. Perhaps the form could be clearer, but it is not constitutionally defective. As stated by the Supreme Court in *State v. Rupe*[, 101 Wn.2d 664, 677, 683 P.2d 571 (1984)]: "The statement 'anything you say can be used against you' sufficiently alerts a defendant that his statements may be used in court." The court did not err in

ruling that Spearman's statements were knowingly and voluntarily given.

*Spearman*, 59 Wn. App. at 325-26 (footnotes omitted).

¶17 Campos's argument parallels Spearman's argument—he contends that the juvenile warning portion of the advisement invalidated the *Miranda* warning, thereby invalidating his waiver, making his confession inadmissible. But the detectives properly advised Campos of his *Miranda* rights. And, on its face, the juvenile warning notified him that anything he said could be used against him in a court of law. And the juvenile warning provision prepared him for the possibility that an adult court would hear his case and that his statement would be used against him.

¶18 Moreover, the juvenile warning does not rule out the possibility that the juvenile court's jurisdiction would automatically be declined and that Campos would appear in adult court without any juvenile court declination hearing. The juvenile warning states that "anything you say . . . can also be used against you in an adult court criminal prosecution if the juvenile court decides that you are to be tried as an adult." Ex. 2. To derive the meaning that Campos seeks from the juvenile warning, the clause would need to include a biconditional[5] such as "if and only if."[6] Instead, the juvenile warning gives notice that any statement can be used in an adult proceeding if the juvenile court declines jurisdiction, but it does not rule out the possibility that there are situations in which only an adult court may hear the case.

---

[5] A "biconditional" is "a statement of a relation between a pair of propositions such that one is true only if the other is simultaneously true, or false if the other is simultaneously false." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 212 (2002).

[6] To illustrate: "Able shall go to the store if eggs are on sale" requires Able to go to the store when eggs are on sale but does not preclude the possibility that Able may go to the store for another reason. By contrast, "Able shall go to the store if and only if eggs are on sale" means that Able can go and must go to the store only when eggs are on sale. Some in the legal writing community believe that "only if " is the functional equivalent of "if and only if," but we need not disabuse them of that notion for purposes of this case. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 414 (2d ed. 1995).

¶19 Here, the advisement provided an adequate explanation of Campos's rights. Campos fails to show any confusion the warning caused since the juvenile warning supplied Campos with notice that his statements could be used against him in an adult court and the juvenile warning did not facially mischaracterize the legal process.

¶20 Here, also, the detectives testified that they advised Campos of his *Miranda* rights and that Campos did not ask any questions about his rights or about waiving his rights. Moreover, Campos waived his rights and the detectives did not make any promises or threats, nor did they coerce Campos. Nothing in the record suggests that the detectives convinced Campos to provide a statement through promises that the juvenile court would assume initial jurisdiction over his case.

¶21 Because the detectives recorded Campos's statement, the trial court also had the benefit of both hearing him and seeing his demeanor when he waived his rights and confessed to the shooting. And with no evidence to the contrary and no testimony from Campos, the trial court could determine, based on the detectives' testimony and the video, that the detectives adequately advised Campos of his rights and that he knowingly and voluntarily waived those rights. Campos therefore fails to allege an error of constitutional magnitude that warrants our review.[7]

¶22 Furthermore, Campos cannot demonstrate the prejudice necessary to show a manifest constitutional error merely through a denial of juvenile court jurisdiction: "Absent . . . statutory discretion to assign jurisdiction, a defendant cannot suffer prejudice because his case was not adjudicated in juvenile court." *State v. Salavea*, 151 Wn.2d 133, 140, 86 P.3d 125 (2004). Without a showing of prejudice, Campos also cannot establish that the error was manifest.

---

[7] As in *Spearman*, the juvenile warning could have more clearly explained that the juvenile court's jurisdiction in some instances is automatically declined by operation of statute. Former RCW 13.04.030(1)(e)(v)(E)(I) (2005); *State v. Mora*, 138 Wn.2d 43, 49, 53, 977 P.2d 564 (1999); *In re Pers. Restraint of Boot*, 130 Wn.2d 553, 563, 565, 925 P.2d 964 (1996).

¶23 We hold that the trial court did not err in its conclusion that Campos gave a knowing, voluntary, and intelligent waiver of his *Miranda* rights.

¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON and QUINN-BRINTNALL, JJ., concur.

Review denied at 169 Wn.2d 1021 (2010).