GORDON McCLOUD, J. (concurring)
¶ 45 I agree with the majority that the Sixth Amendment to the United States Constitution, like article I, section 22 of the Washington Constitution, provides two guaranties: the criminal defendant has a right to counsel and the criminal defendant has a right to proceed pro se. I also agree that those two rights sometimes stand in tension with each other. E.g., majority at 182-83, 184-85; accord Faretta v. California, 422 U.S. 806, 832-33, 95 S.Ct. 2525, 45 L. Ed. 2d 562 (1975). Finally, I agree that the majority has properly resolved that tension in this case: Jerome Curry Jr. made an unequivocal request to proceed pro se after a complete colloquy and full advisement of his rights.
¶ 46 But there is a problem with our case law on this issue. The problem is that we have come to very different conclusions about when such advisements, colloquies, and attempted waivers are effective. The majority's decision reaches the correct result but does not take any steps toward resolving that inconsistency in our case law.
¶ 47 I think that our conclusions vary so dramatically because we use the abuse of discretion standard to review the validity of waivers and attempted waivers of the right to counsel. We should instead apply de novo review to the trial court's legal determination of whether a criminal defendant has effectively waived the constitutional right to counsel through a particular set of advisements, questions, and answers captured on a written record. This would allow us to attain greater consistency in our case law concerning the adequacy of waivers of the right to counsel. It would also align our standard for reviewing waivers of this fundamental constitutional right with our standards for reviewing waivers of most other constitutional rights.
¶ 48 For that reason, I respectfully concur.
I. Prior Decisions of This Court Have Come to Divergent Conclusions about Whether Similar Colloquies Are Adequate To Waive the Right to Counsel
¶ 49 Our prior decisions have reached very different conclusions about the legal significance of virtually identical waivers and attempted waivers of the right to counsel. I briefly trace the history of these decisions, before turning to our case law on how to review waivers (or attempted waivers) of other constitutional rights.
A. State v. DeWeese(1991) -Second-Choice Request To Proceed Pro Se Deemed Unequivocal
¶ 50 The first post-Faretta case of this court to address the issue of self-representation in detail is State v. DeWeese, 117 Wash.2d 369, 816 P.2d 1 (1991). The DeWeese court addressed a self-representation request similar to the one that Curry made-and we ruled that the request was unequivocal.
¶ 51 In DeWeese, the first appointed counsel withdrew due to a conflict.[1] DeWeese then moved to replace the second appointed lawyer with a third one. The trial court denied this request and gave DeWeese a choice: it "allowed Mr. DeWeese the option of either being represented by Mr. Baum or representing himself." Id. at 372, 816 P.2d 1. The trial court advised DeWeese of the severity of his situation and the dangers of self-representation. It also "advised Mr. DeWeese against opting for self-representation rather than remaining with Mr. Baum as appointed counsel." Id. at 373, 816 P.2d 1.
¶ 52 DeWeese responded that this "choice"-between a lawyer he didn't want or self-representation-was really forcing him to request self-representation. Id. at 378, 816 P.2d 1. The trial court nevertheless forced-or allowed, depending on one's perspective- *190 DeWeese to proceed pro se to trial. On appeal, following conviction, DeWeese argued that his request for self-representation was forced on him and, hence, that the request was equivocal and ineffective. Id. at 375, 816 P.2d 1.
¶ 53 We rejected DeWeese's claim and affirmed his conviction. We reviewed the trial court's decision for abuse of discretion. Id. at 376-77, 379, 816 P.2d 1. We found that despite the fact that DeWeese's request to proceed pro se was a second choice, that request was still unequivocal:
Mr. DeWeese's remarks that he had no choice but to represent himself rather than remain with appointed counsel, and his claims on the record that he was forced to represent himself at trial, do not amount to equivocation or taint the validity of his Faretta waiver. These disingenuous complaints in Mr. DeWeese's case mischaracterize the fact that Mr. DeWeese did have a choice, and he chose to reject the assistance of an experienced defense attorney who had been appointed.
Id. at 378, 816 P.2d 1 (emphasis added).
B. State v. Luvene(1995) -Second-Choice Request To Proceed Pro Se Deemed Equivocal
¶ 54 The next two decisions of our court came to a different conclusion based on similar records. They treated second-choice requests for pro se status, like the one that DeWeese made and the one that Curry made, as equivocal.
¶ 55 In State v. Luvene, the defendant moved to proceed pro se after his attorney obtained a continuance to interview witnesses and prepare for the penalty phase of his capital trial. 127 Wash.2d 690, 698-99, 903 P.2d 960 (1995). Luvene opposed the continuance and, in doing so, stated that he would rather represent himself than wait for counsel to be ready:
"I've been here since July.... You know, I don't wanna sit here any longer. It's me that has to deal with this. If I'm prepared to go for myself, then that's me. You know, can't nobody tell me what I wanna do. They say I did this, so why not-if I wanna go to trial, why can't I go to trial on the date they have set for my life? I'm prepared. I'm not even prepared about that. I wanna go to trial, sir. ...
"I don't wanna extend my time. This is out of my league for doing that. I do not want to go. If he's not ready to represent me, then forget that. But I want to go to trial on this date."
Id. at 698, 903 P.2d 960 (quoting Luvene Report of Proceedings at 72-73). The trial court denied Luvene's request. Id.
¶ 56 On appeal, Luvene argued that his statements constituted an unequivocal request to proceed pro se. Id. This court did not specify our standard of review. But we accepted the trial court's ruling that Luvene's motion was not unequivocal:
While Mr. Luvene did state that he was "prepared to go for myself," he also stated, "I'm not even prepared about that," and "[t]his is out of my league for doing that." Taken in the context of the record as a whole, these statements can be seen only as an expression of frustration by Mr. Luvene with the delay in going to trial and not as an unequivocal assertion of his right to self-representation.
Id. at 698-99, 903 P.2d 960. Essentially we ruled that since Luvene requested pro se status as a second choice-and for what most would consider a poor reason-we would uphold the trial court's ruling that Luvene was really just expressing frustration. Id.
C. State v. Stenson(1997) -Second-Choice Request To Proceed Pro Se Deemed Equivocal
¶ 57 This court came to a conclusion similar to the one in Luvene in State v. Stenson, 132 Wash.2d 668, 940 P.2d 1239 (1997), just two years later. In Stenson, we also held that the defendant's second-choice motion to represent himself was equivocal and, hence, insufficient. Id. at 741, 940 P.2d 1239.
¶ 58 But the colloquy in that case was virtually identical in relevant respects to the colloquy in Curry's case. In Stenson, voir dire began on June 9, 1994. Id. at 730, 940 P.2d 1239. On July 12, 1994, Stenson filed a motion for appointment of a new lawyer or, in the alternative, for permission to proceed *191 pro se. Id. at 730-31, 940 P.2d 1239. The trial court denied the motion the next day. It denied the request for substitute counsel on the ground that Stenson made that request only because of a disagreement with his counsel over trial tactics. Id. at 732-33, 940 P.2d 1239. It denied Stenson's request to proceed pro se on the ground that Stenson's main goal was appointment of new counsel, so his alternative request to proceed pro se was not unequivocal. (It also ruled that the motion to proceed pro se was untimely). Id. at 733, 940 P.2d 1239.
¶ 59 Stenson made a similar set of alternative motions-for new counsel or pro se status-a few days later. Id. The written motion sought substitute counsel. Id. (citing Stenson sealed Report of Proceedings at 513). But when the trial court denied that written motion, Stenson again moved to proceed pro se:
"THE DEFENDANT: ... I would formally make a motion then that I be able to allow [sic] to represent myself. I do not want to do this but the court and the counsel that I currently have force me to do this.
"As I said, I have been under the illusion that I was going to be defended. Not merely as Mr. Leatherman stated the other day, he would cross examine witnesses. That is not a defense."
Id. at 739, 940 P.2d 1239 (emphasis added) (quoting Stenson Report of Proceedings at 3312). The trial court denied the motion on the ground that it was equivocal and untimely:
"THE COURT: Mr. Stenson, I do not consider the issue of the trial strategy or trial tactics which are going to be undertaken here as anything which is resolved.
"THE DEFENDANT: Excuse me?
"THE COURT: I don't consider that resolved. That's a decision between you and your counsel and that will have to be resolved as we get into the trial. And I can't resolve that for you.
"As to a motion to represent yourself at this point in the trial, as I have indicated, certainly you have a constitutional right to do that if a motion is timely made.
"At this point in time I find that that motion is not timely made and I also find based upon your indications that you really do not want to proceed without counsel.
"THE DEFENDANT: But likewise I do not proceed [sic] with counsel that I have.
"THE COURT: I understand that. Based upon those considerations, I'm going to deny the motion to allow you to proceed pro se."
Id. at 739-40, 940 P.2d 1239 (quoting Ste n s on Report of Proceedings at 3312-13).
¶ 60 This court reviewed the denial of the request for self-representation for abuse of discretion. Id. at 737, 940 P.2d 1239. We acknowledged that a request for self-representation can be stated "in the alternative of a request for new counsel" and still, theoretically, be unequivocal. Id. at 741, 940 P.2d 1239. But we concluded that the record as a whole indicated that the defendant did not want to proceed pro se as a first choice and deemed the pro se motion equivocal for that reason. Id. at 741-42, 940 P.2d 1239. We explained, "[Stenson] told the trial court that he did not want to represent himself but that the court and his counsel had forced him to do that. More importantly, the Defendant did not refute the trial court's final conclusion that 'he really [did] not want to proceed without counsel.' " Id. at 742, 940 P.2d 1239 (emphasis added) (alteration in original) (quoting Stenson Report of Proceedings at 3313). We deferred to the trial court's decision that the defendant's "forced" choice to seek self-representation was not unequivocal.
D. State v. Madsen(2010) -Second-Choice Request To Proceed Pro Se Deemed Unequivocal
¶ 61 Our court's next decision in this line of cases is State v. Madsen, 168 Wash.2d 496, 229 P.3d 714 (2010). In Madsen, the defendant moved to proceed pro se on three separate occasions. Id. at 500, 229 P.3d 714. Madsen made his first motion to proceed pro se on January 24, 2006, when "Madsen's privately retained counsel withdrew and Madsen personally moved to proceed pro se." Id. at 501, 229 P.3d 714. When the trial court *192 inquired why Madsen wanted to represent himself, Madsen replied that he believed he " 'could resolve the whole issue.' " Id. (quoting Madsen Report of Proceedings (Jan. 24, 2006) at 5). The court deferred ruling on this motion but appointed new counsel, stating, " 'After you have a chance to talk with them [new counsel], if you still want to proceed pro se, I'm more than happy to hear the motion.' " Id.
¶ 62 Madsen made a second "motion to proceed pro se or in the alternative to terminate his counsel's representation" on March 7, 2006. Id. (citing Madsen Report of Proceedings (Mar. 7, 2006) at 3). During the hearing on this motion, "Madsen stated several reasons why he did not want to be represented by his then-counsel and concluded, 'I think that I'd be better off representing myself ....' " Id. (citing Madsen Report of Proceedings (Mar. 7, 2006) at 8). As in Stenson, the trial court was concerned that "Madsen's true motive was to fire counsel, not necessarily to proceed pro se." Id. Additionally, Madsen's counsel indicated that he had concerns regarding Madsen's competency. Id. The trial court determined that the best option was to appoint new counsel over Madsen's objection. Id. at 501-02, 229 P.3d 714.[2]
¶ 63 On May 2, 2006, Madsen made his third and final motion to proceed pro se. "The trial court replied that it did not think Madsen was prepared to interview and select jury members or become sufficiently familiar with the trial procedures in time for trial." Id. at 502, 229 P.3d 714.
The court then asked Madsen whether he still wished to represent himself, and Madsen replied, "at this point I am forced, almost forced into doing that, so I would say yes." [Report of Proceedings] (May 2, 3, 4, 8,2006) at 87. The court then stated, "I am going to deny your motion to proceed pro se. I don't feel you are prepared." Id. at 89.
Id. (emphasis added). The following day, at the prosecutor's request, the court clarified its reasons for denying Madsen's motion. Id. The trial court then further clarified its ruling in writing the next day. Id. at 502-03, 229 P.3d 714. Both clarifications focused on Madsen's third request for self-representation, and both clarifications focused on Madsen's courtroom conduct as well as the untimeliness of that third motion.
¶ 64 Madsen was convicted and the Court of Appeals affirmed. Statev.Madsen, noted at 143 Wash. App. 1028, 2008 WL 625282.
¶ 65 We reversed. Madsen, 168 Wash.2d 496, 229 P.3d 714. We began by applying the abuse of discretion standard. Id. at 504, 229 P.3d 714. We held that the trial court properly deferred ruling on Madsen's first request to proceed pro se. Id. at 506, 229 P.3d 714. But we concluded that the trial court abused its discretion by failing to grant Madson's second request to proceed pro se. We acknowledged that Madsen's second request was coupled with an alternative request to fire substitute counsel. Id. at 507, 229 P.3d 714. But we did not treat these alternative requests as equivocal as we had in Stenson and Luvene. Instead, we held:
Madsen explicitly and repeatedly cited article I, section 22 of the Washington State Constitution -the provision protecting Madsen's right to represent himself. Madsen never wavered from his demand for self-representation. Unlike his January motion, the court had clear notice; the hearing was explicitly set to consider Madsen's motion to proceed pro se or, alternatively, to fire his attorney.
Id. at 506-07, 229 P.3d 714 (second emphasis added).
E. Faretta v. California(1975) -Second-Choice Request To Proceed Pro Se Deemed Unequivocal
¶ 66 Thus, our court has a post-Faretta history of treating second-choice requests to proceed pro se in different ways. We should *193 therefore go back to basics-and in this context, that means going back to the seminal United States Supreme Court case on how to treat such second-choice or "forced" requests to proceed pro se- Faretta, 422 U.S. at 835, 95 S.Ct. 2525.
¶ 67 In Faretta, the defendant declared that he wanted to represent himself. But he explained that his reason for moving to proceed pro se was that the public defender's office was overburdened with an extremely heavy caseload:
Well before the date of trial, however, Faretta requested that he be permitted to represent himself. Questioning by the judge revealed that Faretta had once represented himself in a criminal prosecution, that he had a high school education, and that he did not want to be represented by the public defender because he believed that that office was "very loaded down with ... a heavy case load." The judge responded that he believed Faretta was "making a mistake" and emphasized that in further proceedings Faretta would receive no special favors.
Id. at 807-08, 95 S.Ct. 2525 (emphasis added) (alteration in original).
¶ 68 The trial court initially accepted Faretta's waiver of the assistance of counsel. Id. at 808, 95 S.Ct. 2525. But a few weeks later, the trial court reversed itself. It held a hearing to determine Faretta's ability to conduct his own defense. It questioned Faretta about procedural matters such as the rules of evidence and the ways to challenge potential jurors. The colloquy with Faretta was extensive, and Faretta successfully fielded several technical legal questions. Id. at 808 n.3, 95 S.Ct. 2525. The trial court nevertheless denied Faretta's request to proceed pro se. Id. at 808-09, 95 S.Ct. 2525.
¶ 69 The Supreme Court reversed. It did not state what standard of review it was using. But it clearly rejected the trial court's assessment of Faretta's motion. Instead, it ruled-based on the written record-that "weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." Id. at 835, 95 S.Ct. 2525.
¶ 70 This means that the Supreme Court read the record independently, without deference to the trial court, and treated Faretta's statement that the public defender was overworked, and for that reason he needed to represent himself, as "unequivocal[ ]." Id.
F. Conclusion as to This Court's Treatment of Second-Choice Requests To Proceed Pro Se
¶ 71 In sum, Stenson and Luvene treated requests for pro se status, where the defendant indicated that he was being forced by circumstances to proceed pro se as a second choice, as equivocal. Stenson, 132 Wash.2d at 739, 940 P.2d 1239 ; Luvene, 127 Wash.2d at 698-99, 903 P.2d 960. Faretta, Madsen, and DeWeese, in contrast, treated requests for pro se status, where the defendant indicated that he was being forced by circumstances to proceed pro se as a second choice, as unequivocal. Faretta, 422 U.S. at 835, 95 S.Ct. 2525 ; Madsen, 168 Wash.2d at 507, 229 P.3d 714 ; DeWeese, 117 Wash.2d at 378, 816 P.2d 1.
¶ 72 Our trial courts do not benefit from such mixed messages. I think the problem is due in part to a deferential standard of review that prevents us from developing a consistent legal analysis of when a waiver of the constitutional right to counsel is effective. We should address the inconsistency by applying the standard of review that we usually apply to review of legal and constitutional issues, including the issue of waiver of other constitutional rights: de novo review.
II. The Majority Is Correct That Madsen Adopted an Abuse of Discretion Standard for Reviewing the Voluntariness of Waivers of the Right to Counsel
¶ 73 The majority based its decision to review Curry's self-representation request for abuse of discretion on Madsen. Majority at 183-84 (citing Madsen, 168 Wash.2d at 504, 229 P.3d 714 ). And the majority is correct that Madsen adopted that deferential standard of review.
¶ 74 But the Madsen court did not explain why it adopted that deferential standard. Instead, it stated only that "[a]s a request for pro se status is a waiver of the constitutional *194 right to counsel, appellate courts have regularly and properly reviewed denials of requests for pro se status under an abuse of discretion standard." Madsen, 168 Wash.2d at 504, 229 P.3d 714 (citing Statev.Hemenway, 122 Wash. App. 787, 792, 95 P.3d 408 (2004) ). Then, based on the factual circumstances surrounding Madsen's requests for pro se status, we ruled that the trial court had abused its discretion. Id. at 507, 229 P.3d 714.
¶ 75 Notably, however, we ruled that the trial court abused its discretion because it "rel[ied] on improper legal reasoning and thus reliance on such is an abuse of discretion." Id. We then explained what the legal error was in a passage that sounds more like de novo review than deferential review: "The argument that Madsen's request was equivocal because it was coupled with an alternative request is fallacious and ignores this court's precedent." Id. But Madsen said that it was using the abuse of discretion standard, and that deferential standard stuck.
III. Madsen's Abuse of Discretion Standard Is Incorrect: It Conflicts in Principle with Decisions of This Court Applying De Novo Review to the Voluntariness of Waiver of Other Constitutional Rights
¶ 76 But we generally review the voluntariness of waivers of constitutional rights de novo. Madsen's adoption of the abuse of discretion standard conflicts in principle with those decisions.
¶ 77 For example, we review the voluntariness of a criminal defendant's waiver of his constitutional right to refuse consent to a search de novo. E.g., Statev.Budd, 185 Wash.2d 566, 571-73, 374 P.3d 137 (2016) (reviewing de novo the issue of voluntariness of consent to search during "knock and talk" investigations where there was an absence of Ferrier[3] warnings).
¶ 78 Similarly, we characterize the voluntariness of a defendant's waiver of the right to jury trial as a legal question, and we review it de novo. E.g., State v. Buckman, 190 Wash.2d 51, 57, 409 P.3d 193 (2018) ("The standard of review in this case is de novo. ... [T]he request for [plea] withdrawal in this case is based on a claimed constitutional error [involuntary waiver of right to trial and resulting guilty plea] and resulting prejudice-both of which are issues that we review de novo."); State v. Bradshaw, 152 Wash.2d 528, 531, 98 P.3d 1190 (2004) (reviewing constitutional issues de novo (citing City of Redmond v. Moore, 151 Wash.2d 664, 668, 91 P.3d 875 (2004) ) ).
¶ 79 Likewise, we consider the voluntariness of a waiver of the constitutional right to remain silent to be a question of law reviewable de novo. E.g., State v. McReynolds, 104 Wash. App. 560, 575, 17 P.3d 608 (2000) ("A trial court's determination on the 'ultimate issue of "voluntariness' " [of a confession] is a legal determination, subject to independent, de novo review." (quoting Miller v. Fenton, 474 U.S. 104, 110, 106 S.Ct. 445, 88 L. Ed. 2d 405 (1985) ) ).
¶ 80 We seem to review the validity of a criminal defendant's waiver of the constitutional right to appeal de novo. See State v. Sweet, 90 Wash.2d 282, 289, 581 P.2d 579 (1978) (reviewing the record to determine the merits of the defendant's constitutional claim without presuming waiver because "it is incumbent on a reviewing court to make its own independent examination and evaluation of the facts" (citing State v. Byers, 85 Wash.2d 783, 539 P.2d 833 (1975) ) ).[4]
¶ 81 We consider the validity of a waiver of Miranda[5] rights during a custodial interrogation to be a legal issue that is reviewed de *195 novo. State v. Campos-Cerna, 154 Wash. App. 702, 708, 226 P.3d 185 (2010) (" Miranda claims are issues of law that we review de novo. We also review de novo the adequacy of a Miranda warning and whether there was a valid waiver of Miranda rights." (citation and footnote omitted) ).
¶ 82 There are certainly exceptions. For example, in State v. Garza, we held that whether a defendant voluntarily waived his right to presence at trial is a factual determination, so we deferred to the trial court's decision on that point by using an abuse of discretion standard of review. 150 Wash.2d 360, 366, 77 P.3d 347 (2003). But in general, we review the voluntariness of relinquishment of a constitutional right de novo.
¶ 83 I would not depart from our general practice of reviewing claimed waivers of constitutional rights de novo in this case. Instead, I would revisit Madsen and apply de novo review to Faretta waivers also.
IV. Madsen's Abuse of Discretion Standard Is Incorrect: It Conflicts Directly with the Persuasive Decisions of Other Courts Applying De Novo Review to Faretta Waivers
¶ 84 The majority relies heavily on Ninth Circuit decisions concerning the effectiveness of attempted waivers of the right to counsel. E.g., majority at 186-86.
¶ 85 The Ninth Circuit, however, reviews the voluntariness of Faretta waivers of the right to counsel de novo. E.g., United States v. Neal, 776 F.3d 645, 657-58 (9th Cir. 2015) ("We review whether a Faretta waiver satisfied these requirements de novo, even where the defendant failed to raise the issue of the validity of the Faretta waiver to the district court." (citing United States v. Erskine, 355 F.3d 1161, 1166-67 (9th Cir. 2004) ) ); United States v. Gerritsen, 571 F.3d 1001, 1006 (9th Cir. 2009) ("We review the validity of a waiver of the right to counsel de novo." (citing United Statesv.Forrester, 512 F.3d 500, 506 (9th Cir. 2008) ) ); see also Crandell v. Bunnell, 25 F.3d 754, 754 (9th Cir. 1994) (per curiam) ("Crandell claims he did not voluntarily waive his right to counsel and elect self-representation in the municipal court proceedings. This is a mixed question of law and fact which we review de novo." (citing United Statesv.Robinson, 913 F.2d 712, 714 (9th Cir. 1990) ) ); United States v. Springer, 51 F.3d 861, 864 (9th Cir. 1995) ("Whether a defendant knowingly, voluntarily and intelligently waived his Sixth Amendment right to counsel is a mixed question of law and fact that we review de novo" (citing Robinson, 913 F.2d at 714 ) ).
¶ 86 Other federal courts review Faretta waivers de novo also. E.g., United States v. Kimball, 291 F.3d 726, 730 (11th Cir. 2002) (per curiam) ("A district court's conclusion that a defendant's [ Faretta ] waiver is valid-that it is knowing, voluntary, and intelligent-is a mixed question of law and fact that we review de novo." (citing United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995) ) ); United States v. Ladoucer, 573 F.3d 628, 633 (8th Cir. 2009) ("We review de novo a district court's decision to permit a defendant to proceed pro se." (citing United States v. Crawford, 487 F.3d 1101, 1105 (8th Cir. 2007) ) ); United States v. Belin, 868 F.3d 43, 53-54 (1st Cir. 2017) ("[o]ur standard for reviewing the adequacy of such a warning called a Faretta warning ... is effectively de novo"), cert. denied, --- U.S. ----, 138 S.Ct. 703, 199 L.Ed.2d 576 (2018) ; United States v. Roy, 444 F. App'x 480, 484 (2d Cir. 2011) ( Faretta waiver is reviewed de novo).
¶ 87 To be sure, that is not the universal view. Some federal courts treat the standard of review for waivers of the right to counsel as an open question. United States v. McBride, 362 F.3d 360, 365-66 (6th Cir. 2004) (noting that whether plain error or de novo review applies to challenges to a Faretta waiver remains an open question). Others apply more deferential review. For example, the Fourth Circuit applies de novo review to a waiver of the right to counsel up until the start of trial. United States v. Hickson, 506 F. App'x 227, 233 (4th Cir. 2013). Once the trial has started the court reviews a district court's decision to allow a defendant to proceed pro se for an abuse of discretion. Id.
¶ 88 The majority, however, provides no explanation for its reliance on persuasive Ninth Circuit precedent for one part of the Faretta waiver analysis but not for this standard-of-review *196 part of the Faretta waiver analysis. I would not parse out the holdings of these Ninth Circuit decisions in such a stingy manner. Instead, I would revisit Madsen and apply de novo review to Faretta waivers.
V. Madsen's Abuse of Discretion Standard Is Incorrect: It Conflicts in Principle with the Persuasive Decisions of Other Courts Applying De Novo Review to Waivers of Other Important Constitutional Rights
¶ 89 Madsen's adoption of the abuse of discretion standard also stands in tension with the persuasive decisions of other courts applying de novo review to the voluntariness of waiver decisions by criminal defendants.
¶ 90 For example, other courts-including the United States Supreme Court-hold that the voluntariness of a criminal defendant's waiver of the right to remain silent (and the admissibility of subsequent confessions) is reviewed de novo. Miller, 474 U.S. at 110, 106 S.Ct. 445 (finding the issue of voluntariness is a legal question requiring an independent federal determination); United States v. Preston, 751 F.3d 1008, 1020 (9th Cir. 2014).
¶ 91 Other courts hold that the voluntariness of a criminal defendant's waiver of the Sixth Amendment right to a speedy trial is reviewed de novo. E.g., United States v. Tanh Huu Lam, 251 F.3d 852, 855 (9th Cir. 2001) ("Lam's motion to dismiss based upon the Sixth Amendment right to a speedy trial is reviewed de novo." (citing United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993) ) ).
¶ 92 Other courts review the validity of a criminal defendant's waiver of the right to counsel during interrogation de novo. E.g., United States v. Winn, 969 F.2d 642, 643 (8th Cir. 1992) (reviewing magistrate judge's factual findings concerning waiver under the deferential clearly erroneous standard, but reviewing the decision on whether a valid waiver occurred as a question of law subject to de novo review).
¶ 93 Other courts review the voluntariness of a defendant's decision to waive the right to trial and plead guilty de novo. E.g., United States v. Mitchell, 633 F.3d 997, 1001 (10th Cir. 2011) ("Our review of the voluntariness of a guilty plea is de novo." (citing United States v. Hamilton, 510 F.3d 1209, 1215-16 (10th Cir. 2007) ) ).
¶ 94 In sum, courts in other jurisdictions generally review the voluntariness of criminal defendants' waiver decisions de novo. Those decisions are consistent with most of the decisions of our court, summarized in Part III, above. But they are inconsistent with Madsen.
CONCLUSION
¶ 95 Courts-including our court-generally review a decision about the voluntariness of a criminal defendant's waiver of an important constitutional right de novo. This is certainly the better view. It conforms to our court's general rule that the validity of waivers of most constitutional rights are reviewed de novo.[6] It conforms to our court's general rule that other mixed questions of fact and law are reviewed de novo.[7] And it conforms to the general rule in sister jurisdictions that waivers of constitutional rights, including the *197 constitutional right to counsel, are reviewed de novo.
¶ 96 I would therefore revisit Madsen and apply de novo review to Faretta waivers. For that reason, I respectfully concur.

DeWeese, 117 Wash.2d at 378, 816 P.2d 1 ("The record shows Mr. DeWeese's refusal to accept the professional advice of his first court-appointed counsel led to ethical problems for his attorney, which eventually led to his withdrawal from the case.").

Madsen offered to take an "TQ (intelligence quotient) test," a " 'psychological exam,' " or whatever assessment the judge wanted to show his competency. Id at 502, 229 P.3d 714 (quoting Madsen Report of Proceedings (Mar. 7, 2006) at 18-19). No competency hearing was ordered. Id. On March 9, Madsen's newly appointed counsel informed the court she had no concerns regarding Madsen's competency. Id.

State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998).

Other courts also review waiver of the right to appeal de novo. United Statesv.Petty, 80 F.3d 1384, 1386 (9th Cir. 1996) ("We review de novo the issue [of] whether [defendant] has waived his right to appeal." (citing United States v. Catherine, 55 F.3d 1462, 1464 (9th Cir. 1995) ) ); United States v. Buchanan, 59 F.3d 914, 916 (9th Cir. 1995) (reviewing de novo the validity of a waiver of appellate rights); United States v. Robertson, 52 F.3d 789, 791 (9th Cir. 1994) (reviewing waiver of a statutory right to appeal de novo (quoting United States v. Gonzalez, 16 F.3d 985, 988 (9th Cir. 1994) ) ).

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966).

E.g., State v. Herron, 183 Wash.2d 737, 743, 356 P.3d 709 (2015) (reviewing whether a defendant waived a constitutional right to a public trial de novo).

In re Pers. Restraint of Brett, 142 Wash.2d 868, 873, 16 P.3d 601 (2001) (finding ineffective assistance of counsel claims are a mixed question of law and fact that the Washington Supreme Court reviews de novo); State v. Lopez, 190 Wash.2d 104, 116-17, 410 P.3d 1117 (2018) (finding that legal conclusions made during ineffective assistance of counsel claims are reviewed de novo); In re Pers. Restraint of Lui, 188 Wash.2d 525, 538, 397 P.3d 90 (2017) (reviewing ineffective assistance of counsel claims de novo); In re Pers. Restraint of Fleming, 142 Wash.2d 853, 865, 16 P.3d 610 (2001) ("Because claims of ineffective assistance of counsel present mixed questions of law and fact, we review them de novo." (citing State v. S.M., 100 Wash. App. 401, 409, 996 P.2d 1111 (2000) ) ); see also Statev.White, 80 Wash. App. 406, 410, 907 P.2d 310, 313 (1995) (reviewing challenges to effective assistance of counsel de novo); Mannhalt v. Reed, 847 F.2d 576, 579 (9th Cir. 1988) ("The question of whether an attorney renders ineffective assistance is a mixed question of law and fact, reviewed de novo." (citing Butcher v. Marquez, 758 F.2d 373, 376 (9th Cir. 1985) ) ).